Thank you, Your Honor. May it please the Court, Thomas Buntin, Senior Deputy County Counsel, on behalf of the County of San Diego and the County's elected Board of Supervisors, I'd like to reserve five minutes of my time for rebuttal. The initial question in this case is whether Section 253A of the Telecommunication Act applies to the County's ordinance, which regulates the construction of individual wireless facilities. Under Section 332C7A provides, except as provided in this paragraph, nothing in this chapter shall limit the authority of a state or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities. The District Court interpreted that provision to only apply to decisions, but the provision in question refers to the authority over decisions, and the section is titled Preservation of Local Zoning Authority. Congress understood that local governments make decisions on individual wireless applications based upon zoning ordinances, and that these decisions aren't pulled out of thin air, but the authority to make those decisions are contained in zoning ordinances. Also, the background of the passage of Section 332 also indicates this section was meant to preserve local zoning authority as well. The House version of the bill, or the House version of Section 332, would have established through the FCC national siting standards that would have applied across the country and would have set one individual standard for the siting. What if they decide as a matter of zoning we're going to have a cell-free zone? You know, we sort of find that in this area people tend to talk on their cell phones in the restaurants and theaters, and people find that annoying, so we're going to set aside a part of the town where there's going to be no cell as a matter of zoning. Well, do you think the county has that authority? Well, I don't think the county would necessarily have that authority. It would depend on the situation of how big the area was, whether it could be served, whether it could be wireless towers that would be in a nearby area that would have sufficient coverage to cover the area in question. The very point would be that there would not be coverage. They wouldn't have anything to do with the towers, but they say, you know, we like to have a part of town where people don't talk on the cell phone. You know, you can go to a restaurant, you don't have people talking on the cell phone. Cell phones don't go off. Or they could say, you know, we've got a lot of traffic problems, and some of them are related to people reacting on the cell phone, and so in this sort of particularly busy part of town, we're going to prohibit towers that provide coverage. So this would not be tower decisions. This would not be a decision having to do anything with the tower, the location of the tower in terms of aesthetics or anything of that sort, but zoning that goes directly to the availability of service or essentially designed to prohibit service in certain parts of town. Well, if I understand the question correctly, and perhaps I don't, it seems to me that there's a difference between outlawing people's uses of a cell phone in a certain area, having a restaurant, for instance, not being a cell use area, and a situation involving no cell towers in a particular area to provide service. With respect to this law, it specifically dealt with the issues involving the construction of individual wireless facilities. And there, of course, are protections within the law to protect individual facilities. In Metro PCS, this court ruled that if the cell tower is designed to close a significant gap in coverage, and there is this least restrictive means of doing it, that would be a prohibition within the meaning of Section 332's anti-prohibition provision. Could a local government decide to have only one cell phone provider? No, Your Honor. I don't think they could. And I think that provision likely would be challenged under Section 332C3, which is really the entry provision of the Telecommunications Act. This provision in the county's ordinance isn't an entry requirement. The record shows that Sprint has 100, at least from 1999 to the time we briefed this in the Court of Appeal, Sprint had received approval for 106 communication facilities or towers within the county of San Diego. And under the county's ordinance, and I must correct an error in my brief, I had originally said that six of the ten applications submitted under the ordinance had been granted. It's actually four of the nine applications have been granted. I don't think it's a material difference, but I do apologize to the Court for not citing accurately the record. When I went back and read it, I added the four and the two together to equal six, and that didn't work. If the zoning provision does apply, then they would have a cause of action in regards to the delay, right? Well, there is a delay provision under Section 332 which says that you can challenge the action or the failure to act. So insofar as their complaint is that this is dragging on much too long and they're not able to go forward, they would have a cause of action. They would have a cause of action, but it's important to note that in the legislative history, the House Conference Report, that Congress indicated that the normal time provisions apply under local zoning ordinances. Mr. Counsel, I'm having trouble figuring out whether to use 253 or 332 to analyze the cause of action. Could you explain what causes of action there might be for cell phone providers that would fall under 253 but not 332, and why? Well, I think that is a key initial question here, Judge Kleinfeld. I think 332C7A says this is the exclusive provision here governing the authority over decision. So you don't even get to 253. There are a number of provisions that could be challenged under 332. It has an anti-prohibition provision, and the language of the anti-prohibition provision in Section 332C7 is nearly identical to the anti-prohibition provision of Section 253. I have a question. Wouldn't a franchising ordinance for wireless be challengeable under 253? I think under this provision, it's probably 332C3, which governs entry regulations here for wireless. And with respect to 253E, it says nothing in this section shall affect the application of Section 332C3 of this title to commercial mobile service providers. I think 332C3 is really the equivalent of 253A for wireless providers. Is it permissible to read these sections so that 253 applies to carriers generally, AT&T a monopoly on telephone service in the state, and then 332 means the state can't give AT&T a monopoly on cell phones? I think certainly our ordinance is not a franchise. I think 332C3 would be the provision that says you can't give a monopoly over cell phones because that's really the equivalent of 253A when it comes to cell phones. But again, if you would want to read 253 to prohibit franchises and monopolies, you could do that and not affect the county's ordinance in any way because the county's ordinance governs the construction of individual wireless facilities. If Sprint has a number of facilities that are already in the county, the effect of a denial of one of these facilities doesn't mean that Sprint is going to stop providing service or doesn't have the ability to provide service. It means that one application, one individual facility is being denied. And, of course, we know from the legislative history and we know from the provisions itself that Congress intended to allow denials because those can be challenged based upon substantial evidence rule. This court in Metro PCS said a denial alone is not a prohibition within the meaning of Section 332's anti-prohibition. To rule in your favor, do we have to overrule the Auburn case? I don't think you have to even get to Auburn, truthfully. Under 332C7A, this is the exclusive provision that applies to ordinances like the county's ordinance that regulates the construction of individual wireless facilities. Auburn is a landline franchise case. They didn't examine 332 at all because, of course, it didn't involve wireless. It didn't involve the construction of individual wireless facilities. So I don't think you have to even reach the issue. If you do reach the issue, I would urge the court, based upon the Eighth Circuit's decision in Level 3 Communications,  or have the effect of prohibiting wireless facilities here. What standard would we use to determine whether an ordinance has the effect of prohibiting? How does that get measured? Well, I think this is a unique case because when it comes to wireless facilities, Congress gave a definition in the legislative history of prohibit or have the effect of prohibit. And they said bans or policies that have the effect of banning. And that's what they intended to be the standard to be applied. Well, that's just using ban instead of prohibit. But how do we know if something has the effect? We know if something bans it or prohibits it. It says, don't come here. But how do we know if something less direct has that effect? I think you can look at the provisions, and one common example that I've kind of drawn from myself to look at would be to say if the county's ordinance or any ordinance said you can have cell towers here, but you must place all the apparatus underground. And I think the facts will show that the antenna can't be placed on underground. So if you look at the face of the ordinance itself, does it ban wireless facilities? No. Does it contain policies that have the effect of banning wireless facilities? Yes, because it requires every piece of the facility to be underground. Mr. Bunn, let me just return for a minute to Judge Silverman's question. In response to his question, you characterize 332 as applying to individual facilities. But this lawsuit, as I understand it, is a facial challenge to the ordinance itself. Now, doesn't that take it out of 337? Judge, I don't believe so. I think in this case, this is a zoning ordinance that gives the authority over individual zoning decisions that are made. And I think Congress intended those provisions to be governed by 332 and for the authority to be preserved over those decisions, and that authority is contained in the zoning ordinance. And I think going back to the legislative, how this came about, how the law came about, it was really a very big change that happened at the conference. The House bill would have just created a national zoning ordinance in effect, national siting standards by the FCC. And Congress specifically rejected that in favor of the preservation of local zoning authority. So, Mr. Bunn, in response to the Chief's question, is it your position that 332C7BI2 would be the statute we would look at to decide whether or not prohibiting cellular phone service in an entire neighborhood would be construed as effectively prohibiting the provision of personal cellular service? Yes, Your Honor, I believe that is correct. Now, I think maybe it's, you know, I'm going too far in addressing something I don't have to address here, but there might be a provision in which if it was a true barrier to entry, which is not this ordinance but basically said, you know, no cell towers in our jurisdiction. We create a drug-free zone only. We call it a cellular-free zone. Right. That might be challengeable under 332C3, which is the entry provision of 332. But that's not what we have here. What we have here is an ordinance that affects individual zoning decisions. And, again, Congress intended to preserve that local zoning authority. And even if you were to just apply 253 here under these circumstances, you'd certainly have to give the statutes the same meaning in this respect because Congress has said under the anti-prohibition provision of 332 that it's bans or policies that have the effect of banning. And so in this context, those have to be interpreted consistently when you're dealing with cell towers and decisions on individual wireless facilities. Would it be consistent with your reading to just read the statute to mean the local government or state government, but zoning is local, can't create a monopoly, it can't exclude competitors, but it can impose normal zoning restraints that have to do with aesthetic and other traditional zoning requirements? Yes, Your Honor, I think that is very true. Is that the right way to read it? I think that's exactly the right way to read it. The local governments don't have the ability to select one carrier and say you've got the franchise for this city or this county and nobody else can do business here. What do they do about sharing? I was thinking a county would have a real interest in avoiding a tower forest, six different towers for six different cell phone providers. On the other hand, they're pretty restrained in their ability to regulate rates and can't very well make somebody who builds a tower let everyone use it for free. How does that work out? Well, I think the county encourages co-location is what they call it and providers to locate on facilities where there's already a cell phone tower by giving it a lower level of review. But, of course, one of the issues with the district judge was that the county indicated that it would like a letter indicating the willingness of the provider to co-locate. That letter just was to express whether or not they would be willing to do that or not whether that would be something that they were interested in. How coercive can they be? I can see where whoever has the market isn't going to want to let somebody else just put their own antenna up for free on their tower. Yeah, I think that's right. How coercive can a county be? Well, the county has not been coercive. It's just asked for a letter asking to state the willingness, whether they are or not willing to allow co-location. The negotiation would be between the wireless providers as to whether or not they could work out an agreement for compensation. Suppose they just don't want to. Can the county coerce? Well, the county hasn't tried to coerce here in this case. In a hypothetical, you know, I'm just not. Let's assume that whoever has the market advantage has no interest in sharing and that whoever does not have a piece of the market has no desire to pay half the price of the tower because they fear the county is going to muscle the first provider into doing that and into giving them use of the tower for less. What power does the county have? Well, I'll hearken back, and I must admit I wasn't prepared for this, but I'll hearken back to takings doctrines and a physical taking. Maybe that might be construed as a physical taking. If you passed a regulation that required somebody to give up what is essentially their property to another private party, that might constitute a physical taking that would not be allowed. That's my seat of the pants answer to that. Teleprompter. I'm sorry, Your Honor. The teleprompter case. I wasn't speaking of any particular case. There was a case where New York City required building owners to put cable boxes on the roof. Justice Marshall had an opinion saying it's physical property. It's a physical invasion, and that's a taking. Yes, I do now recall that from law school. That must have been what I was thinking about. Yes, Your Honor. But the one problem or at least question I have about applying your theory, which otherwise is quite neat and makes some sense out of the statute, is what if let's take the hypothetical that we were talking about, an ordinance that said you can't have any cell service within some area as a part of zoning. I mean, characterize it as a zoning ordinance, but we want no towers in this area. And let's say somebody has a metro PCS kind of cause of action saying that there's a significant gap and so on. How do they bring that cause of action under C-7 rather than under, or B-7, rather than under 253? Well, I think if there's a specific area within the city or a county that you're not allowed to put a wireless facility, that in and of itself I don't believe establishes a prohibition, and there may be factual inquiries. I'm asking procedurally because you need a final, as I understand it, you're characterizing this section as dealing with individual zoning decisions, but there hasn't been one and there isn't going to be one unless they file a pro forma application they know is going to be rejected. Well, I think that would be an easy thing to do for a wireless provider, to file the pro forma request. If it's in a zone that they know that it's not going to be permitted in, they're likely to get a quick denial. If they don't, they can challenge the failure of the denial. Do you think there could be a futility exception under those circumstances? There might be a futility exception. I mean, really, there's no, I think, under the law requirement to exhaust State remedies before you come into court. So you could come in and say it's a failure to act here, and you could challenge the ordinance on its face at the same time. Now, I would assume one way or another there has to be a way to do that under the circumstances. Yes, I think you could do that. And to do the pro forma application doesn't put a whole lot of burden on a wireless provider. How do you handle the next level, which I understand is technology that essentially uses smaller antennas, less hardware, but you need more locations in order to effectively cover the area? Well, I don't think Congress has placed a different level of examination into those kinds of facilities. I think, you know, they may present less aesthetic issues to the extent that they're smaller and are less intrusive, but I don't think the analysis legally is any different at this point based on that technology. Maybe Congress will pass different legislation in the future to deal with that issue, but to date they have not, and this is the regulation here that governs under those circumstances. But under this ordinance, as I understand it, let's assume it takes 400 sites in order to cover an area that the more traditional technology could cover with 100. They would have to, as I understand it, make 400 separate applications for each location. Is that right? They generally have to do different. I will say occasionally a wireless provider does submit an application to put multiple facilities at the same location. As I understand it, they need to saturate the area, so we're talking about literally 400 in my hypothetical. In that hypothetical, then they would have to submit 400 different applications. Suppose the county decided we're only going to grant 350 of them, but the effect of that is essentially to deprive the carrier of the ability to provide service to entire neighborhoods. They've got a challenge under 332. They can follow Metro PCS, challenge those decisions saying that it's a significant gap in their coverage and this is the least intrusive means of satisfying that coverage gap, and they could prevail. Can you explain to me how such a challenge would proceed, just so I have it clear in my mind? So let's say, picking up exactly on Judge Thomas' hypothetical, let's say they file, I don't know whether 350 or 400 is a realistic number, but let's say they file a group of applications because they want to cover a locality, and the county says 350 of those are approved, 50 are denied. What happens next? I think with respect to the 50 denials, they file a lawsuit challenging the denials, alleging that it's a prohibition in violation of 332. Where? Well, they've got a choice of filing it either in state court or federal court. Let me make my question slightly more specific. They would file an action under this statute? Yes, under 332. Zoning ordinances, of course, are features of state law, right? Yes. And your normal zoning challenge proceeds by a very different path. You go to the zoning board, and the zoning board turns you down, and this is from vague memory, but I think I have it basically right. You then go to the planning commission, and then from the planning commission you go to the city council, and if the city council turns you down, you file a little mandate in the superior court for a review of that, and that eventually could make your way up all the way through the state system. And normally we don't get, even if there is some sort of federal issue in there, normally we don't get involved in this process until there's been an exhaustion of available state court remedies. We don't know what the city's decision is on a zoning issue until the zoning board is active and the planning commission is active and the city council is active. And sometimes we say, if you look at your typical case, like the Tahoe Sierra line of care, we say you've got to go a long ways up through the state. What happens here? Is there an exhaustion requirement out the window? Can they go directly into federal court, let's say, and say I didn't get my ordinance, I'm making a challenge to the statute, or would you insist that they go through the normal state appellate process to get a final determination on the zoning? Well, my recollection... One question. Did you follow all that? Sorry, Your Honor. My recollection, well, the statute says it must be a final action or failure to act. And I believe that the legislative history in the House Conference Report says that they don't intend that to mean that you have to exhaust all available or possible administrative remedies under state law. It just has to be a final action here. There may be some areas where that could be debatable. I mean, what would be a final action? I take it the first step is the zoning board, right? The way you get a variance or a permit under a zoning ordinance, you go... I'm sorry, I really shouldn't be... It's been some years since I did construction on my property, but I recall there were a number of boards and commissions and hearings and things we had to go to and endure before we eventually got to the city council. Gee, in Alaska, we just do it. You know, I argued that. I said, let me do it, because in Alaska... But I do recall there was... And, you know, eventually we were allowed to do everything we wanted to do, but it was not an immediate yes, boy, you know, everything you're doing is fine. There was a whole process we had to go through that took many months. And eventually, I believe, I don't know whether it happened in the case of my own personal construction, but if anything of any size, the city council itself usually has to pass on it before anything commercial, anything of that sort. My understanding is that you have to go to the city council for anything like that. At what point would your client take the position that the denial would be final enough for one of these lawsuits to be filed? Well, in the example of our specific ordinance and the situation involving a major use permit application, if there was an appeal to the county's board of supervisors, I think a final action would be a decision by the county's board of supervisors. Not in all cases. So zoning board wouldn't be enough, planning commission wouldn't be enough. It would be the board of supervisors that would be the end point of the administrative process. And just to hurry along, it would be the point where you would then have to go to court somewhere that you would take the position would be the final denial. And at that point, you wouldn't have to go. I'm not trying to put words in your mouth. I just don't understand. You wouldn't have to go through the mandamus, state mandamus process. Unless you come to federal court and file a lawsuit on this. Yes, you would not have to go through mandamus. You could come right to federal court to file your lawsuit. And the county's ordinance doesn't require, in all cases, that you go through any zoning board. We've got basically two levels of review here. At some places, you go to the planning commission and then to the board of supervisors on appeal. At other places, the director makes the decision, and you can appeal that to the planning commission. You don't take the position that you need to go to the zoning commission and ask for a variance or a change of zoning or anything of that sort. Well, this ordinance allows us, you know, in a conditional use permit, these to go in virtually every zone. But certainly if it didn't allow it, there would be an ability also to ask for a variance as well. I see I've only got three minutes left. If I could reserve my time unless there are any more questions. Go ahead. Thank you. We'll hear from the other side. Thank you, Your Honor. May it please the Court, my name is Dan Pascucci. I represent the appellant and cross-respondent Sprint Telephony PCSLP. At the outset, I will reserve ten minutes of my time consistent with the court's order for Mr. Andrew McBride, representing the Cellular Telephone Industry Association. One of the benefits of the extensive briefing that has been submitted to get to this point is that the issues have been distilled to three facts that I think are dispositive of the entire case. First, Congress intended to reduce, but not eliminate, local regulation of telecommunications providers so that the providers sheltered from excessive regulation can rapidly deliver ever-advancing services to consumers. Second, this Court's longstanding interpretation, most notably in Auburn, of Section 253, is entirely consistent with Congress's intent to reduce regulation. Counsel, when you say reduce, it's a different word from the one that Congress used. They said prohibit or have the effect of prohibiting. And it seems to me that you're trying to get us to read the words prohibit or have the effect of prohibiting as prohibit or burden. Not me, Your Honor. Congress did use the word reduce. Well, they didn't say burden. They said have the effect of prohibiting. Now suppose the local zoning board says you can't put up a cell phone tower unless you grow ivy on the cell phone tower to obscure it. That burdens the cell phone provider. The cell phone provider might be able to produce a spreadsheet saying if we have the additional expense of growing ivy to cover our cell phone tower, as a practical matter it won't be profitable anymore. So this has the effect of prohibiting. But it's hard for me to see why Congress would use the phrase effect of prohibiting if all they meant was burdening. Your Honor, to be clear, I am not asserting that Section 253 is designed to preclude the county from burdening carriers. I think there are many instances, including Your Honor's hypothetical, where burdening of carriers is perfectly appropriate. And there's nothing in our position that suggests otherwise. What about sharing? Sharing is a much more difficult issue. You bet. That's why I was asking about it. I don't know what to do about it. I don't think you've gotten to the answer to your question. And I'd like to try to do so. I think Mr. Buntin hit on the correct point that there is a takings issue there. But I don't think he actually ---- Raffetto, I think it is. Pardon me? Wasn't it Raffetto putting the tower on the apartment building? Actually, I'm no more familiar with the New York case than Mr. Buntin. Loretto? Loretto was a teleprompter. Mr. McBride is smiling like he was there. I think it is a taking. And contrary to what Mr. Buntin stated, the county does not ask carriers for a letter saying, yes, we are willing or no, we're not. Here's my problem with that. I read the whole statute, not just the subsection, to try to figure out what the subsection was for, what this is all about. And the way it looked to me was Congress is trying to prohibit states and localities from selling or giving away monopolies, all kinds of problems with monopolies. The consumers pay a whole lot, big incentive to bribery of local officials, big incentive of extortion by local officials. If you want your cell phone tower, you have to give us a new community center. All kinds of problems with monopolies. So Congress wants to say no monopolies. That's the way it looks to me. But they do want to preserve local zoning. And then I get to the concreteness of providing cell phone service, and gee, either you share a tower or you have a tower forest. That's a real significant aesthetic problem, and it's right square in the middle of what traditional zoning is directed to. And I don't know the solution. Your Honor, if I can suggest several issues. I appreciate the question. There's a lot in there, and I'm going to try to answer each point of it. Does all this have anything to do with this case at this point? Pardon me? Does that question have anything to do with this case at this point? I think it does. I think there are parts of it, but it is a hypothetical question. And in this context, we do have the county actually applying a level of discretion that this Court and many other courts have found to be prohibitive. And it really ‑‑ I think it begs the question that perhaps the Second Circuit answered that. But if that happened, and if they made you share the facilities you didn't want to share, you would have a cause of action under the section that your opponent is relying on, and that would be the end of it. And then you'd win or lose. But why are you any better off under 253A? And why shouldn't we simply say come to court and let's argue about it? Well, several reasons, Your Honor. First of all, section 253 and section 332 were designed by Congress intentionally to do two very different things. Section 332 is designed to provide a remedy for the situation where an ordinance that is assumed for that analysis to be lawful without question was applied to deny a site wrongfully. And that's what section 332 does. Section 253, which applies to protect any entity providing telecommunication service, was designed to allow the court in one shot to stop an ordinance that on its face is prohibitive. I want to ask you about what that means. Both counsel have talked about taking jurisprudence in one way or another. And there are a number of cases, and unlike the Chief, I can't cite the names of them to you, but there are cases that establish when a regulation equals a taking, when all economic value is eliminated. Why wouldn't there have to be a very stringent standard somewhat like that to determine whether something has the effect of prohibiting? That is, it has to basically make it impossible economically, take away the ability, which is a word that's in the statute, take away the ability to offer services. Well, the courts, including this Court and the FCC, have made it clear that the statute, with the exception of the Eighth Circuit, and I suspect we may have an opportunity to discuss that, the Level 3 decision, have made it clear that the county or the local jurisdiction at issue doesn't have to absolutely prohibit in every circumstance wireless or doesn't have to ban it in order to My question was, when we're looking at the phrase that deals with having the effect, because clearly that isn't the same as banning or prohibiting, it's having the effect of, but when we look at how to decide that question, by what measure does some ordinance have the effect of prohibiting, doesn't it have to be a very, very high bar that is similar to the kinds of cases that I mentioned on takings? Your Honor, if I could, I could offer a much better authority to myself, and that's the FCC, the administrative agency charged with applying this statute in the administrative context. And it is stated in the matter of TCI Cablevision of Oakland that in evaluating whether a state or local provision has the impermissible effect of prohibiting an entity's ability to provide any telecommunication service, we consider whether it materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment. That's the standard the FCC has created. That's a standard that this Court in Auburn has favorably referenced, and that's a standard that the county's WTO falls beneath. Materially inhibits is enough. Material inhibition is enough, yes. But why? I still don't understand why that tells us anything about whether it's 353 or 332 that applies. 332 has the same standard. So if 332 applies, you still come in and say you're material interfering and therefore effectively prohibiting. Why don't we just look at 332 as the exclusive provision that applies to this set of circumstances, i.e., wireless and zoning ordinances? And why else would they have included the same language except for the fact that they didn't think 253 applied and they wanted to make sure that the same substantive provision did apply? Well, for several reasons, Your Honor. I think Congress made it very clear, perhaps they could have made it clearer, but I think there is certainly significant evidence that makes it very clear that they did intend Section 253 to apply to wireless carriers. How do you get out of 253 applying other than the absence of a 30-day limitation? Is that the only thing you get out of it? No, absolutely not. What else do you get out of it? I think there's a much ñ that's, I think, trivial compared to what we get out of it. What do you get out of it? What a carrier gets out of a Section 253 challenge is the ability to level the case, apply, as Mr. Bunton suggested, for 40 or 50 applications that are futile, lose them, and then take them one at a time to the court under Section 332. If you have an ordinance that is effectively prohibiting the provision of wireless, it doesn't make sense from a judicial economy perspective. It doesn't ñ it's not consistent with Congress's goal of speeding deployment of advanced telecommunications to force the carrier to go and file challenge after challenge and lose these things. But I asked him that you wouldn't have to do that. That either on a futility exception or by filing one pro forma application, you can get directly at the regulation as a whole. There is no futility exception currently that I'm aware of under Section 332. There isn't under Ninth Circuit law in general. Other than the unreasonable delay. And that would be to suggest then that the carrier has to suffer the unreasonable delay, which is exactly what Congress was trying to get out of the process. Why wouldn't one test case do just as well as a 253 action? In other words, if ñ to go back to the example, if you wanted to put in 400 towers in San Diego, and you put in one application and they said, no, this just completely ñ we know that this kind of application isn't going to work. Presumably if you win, they're going to be bound by that in making future decisions. For several reasons I don't think they would be. First, the remedy under Section 332 is the court ñ the maximum remedy, the most effective remedy is that the court can order the county to issue the permit at issue. Tell the county, give Sprint the permit on that site that's before us. It doesn't enjoin the ordinance or enjoin the ban. And in the hypothetical, that was a denial of 40 sites. I'm sorry, but where did you get that from? Not that that was a limited remedy. I'm sorry. Where do you get the idea that there's a limited remedy under 332? There have been ñ we could probably gather the cases in the time I have allowed, but there have been numerous cases. I believe this Court in the Quest v. City of Berkeley case, the district court did it, and I believe that ñ But it's not in the statute. And we're not paying court, and we could decide that isn't so. It's not there. Did I just look for it? But I think it would be a construction error to read Section 332 as allowing the court to erase or enjoin a ban unless that ban fit the couple of narrow circumstances of regulating on RF emissions or falling into one of the other narrow circumstances. Or prohibiting or having the effect of prohibiting the provision of personal wireless service. Right. So perhaps an outright ban could do that. But the ñ Section 253 still provides a significant remedy that Congress intended to apply to wireless carriers. The reason I'm having so much trouble with this is it's exactly the same language. How can I have a bigger ñ a ban that's the same ban, whatever it is? It's the same language but in a very different context. So we're ñ the prohibition language in Section 332 and the prohibition language in Section 253, one arises in the context of a decisions-based ordinance, and the other arises in the context of an ordinance that addresses statute regulations and other legal requirements. Actually, in 332, the language is the regulation of the placement of construction so-and-so shall not unreasonably discriminate. So it refers directly to the regulation and not to an individual decision. And I believe, Your Honor, when read in context that the word regulation in that context is referring to the act of regulating, the act of allowing or not allowing facilities in, and the ñ there's a very, I think, lucid analysis of that in the initial trial court decision in this case by Judge Keefe that went through all of that. But I believe that the ñ in addition to myself and what other courts have said, the FCC has reached the same conclusion. It's how closely we were decided. Counsel, you're working pretty hard to try to force us to decide this under 253 instead of 332. And I have to say I'm a little puzzled by that. 332 is very specific to mobile provisions. It is far more extensive than the general language of 253. 332 applies to this chapter of which 253 is a part. And I have to say I'm very puzzled as to why you were working so hard to force this under 253. What is it that you think you get under 253 that we can't get under 332? I understand there's more baggage that comes with 332 because it's a more extensive description of procedures by Congress. But what is it that you get under 253? Well, it's not so much ñ I'm not working to force this under Section 253 because of some gain under 253. The reason why we've brought this claim under Section 253 ñ and we had ample notice we could have met the 30-day requirement in a heartbeat. We were, you know, arguing that the county shouldn't have passed this ordinance months before the ordinance was ever passed. The reason I'm arguing that it should be under Section 253 and the reason it should be under Section 253 is because the language of the statutes makes it clear that decisions are relegated to Section 332 and statutes, regulations and other legal requirements are the province of Section 253. But suppose we were to decide that Auburn is wrong in so ñ that it misread the statute insofar as it seems to say that you don't have to have an actual effect but a possible effect. Because, frankly, I don't see any way to read the statute consistently with Auburn. At that point, would you get anything out of 253 that would be worth fighting over? Absolutely. I think you're talking about the question of may prohibit versus prohibit. This case, as the case was with Auburn, the Berkeley case, the Portland case, none of these cases are dealing with a hypothetical of an ordinance that may prohibit. This ordinance does prohibit. This is an ordinance ñ what this amounts to, the ordinance here, just like the Second Circuit noted in the TCG New York case, this is a ban with the ability of the county to waive it. They've said, we get to decide. We can ñ they can rely on anyone. That's how all zoning works. This is welcome to the big city. But, you know, all this abstract stuff sort of makes my eyes glaze over a little bit. Why don't you tell me what it is you want. Are you really saying you want to sort of put up a tower in the middle of San Diego, no matter how big, no matter how ugly, no matter how much it blocks traffic, and you don't have to consult the local authorities about it? And if they come and they say you need a permit, you say go away? Is that what Sprint wants? No, absolutely not, Your Honor, and there's nothing in our briefs in any place where Well, talk to me about what you want. What is it? I mean, you do concede the ability of local bodies to set the kind of uses available in a neighborhood, stopping where you think I'm wrong, the tenor of the neighborhood, the aesthetics of the neighborhood, noise and visual pollution. I take it none of those are things that you really think cities don't have a power to control. I think Congress has I'm asking a question. I think they have the ability to control those things in the right conduit. I think it answers both your questions. What we want, what we're asking the court for, is to require the localities to adopt standard-based ordinances. There's a tremendous difference between a county saying when it writes its ordinance, this is how you should do it. You want to write the ordinance? No. Is that what you're saying? Absolutely not. You want to give them a template and say you legislate our way or it's no good? I've never heard that. I mean, that's a lot of hoots, but Absolutely not. Your Honor, we don't have any desire to dictate the ordinance. I think what the court has to do is You're just like everybody else. You're in line. We control construction. You're going to build something. When a local supermarket wants to add another wing to the supermarket to make it a little bigger, they have to put up flags and all that stuff to give notice to the community. And you're just like that. If you want to come in and you've got your lawn in your house and you want to make the sidewalk a little bigger or make the lawn a little bigger or the sidewalk a little smaller, you have to go get permission from the city because you live with other people in the community. What's so special about Sprint and cell towers that you say you don't have to do this? You don't have to play this game? Congress recognized that telecommunications is a national concern. There's 40,000 political subdivisions in the United States, and Congress decided we don't want 40,000 different levels of penetration. I understand if you were taking the position. Look, they have ordinances that apply specifically to cell phones, and they are treating us different from everything else, and so they are going after cell phones. But what I hear you saying is you don't want to play by the rules that applies to everything else and everybody else in the community. And I don't understand why you would take that kind of a position. You're part of the local community. These are the people you serve. This is your constituency. Without them, you haven't got a business. Why not work for them and get done what you need to get done and go home with your construction and let the lawyers go on and litigate something else? I think I haven't made my position clear. Not to me, anyway. That's not our position. All right. What we believe is the right reading of the law and what the county should do and what we've been imploring them to do for years is to adopt a standards-based ordinance so that carriers can look at the standards and see a way that they could get to a yes answer on a facility. If they tell the carriers that the facilities need to be camouflaged in a certain way and there's a standard that reasonable minds can look at and say, okay, now we know how to get to yes. That is a very different system. I don't understand that with zoning. We really, well, most of our area in Alaska is unzoned. You can do whatever you want. But an area that's zoned, everything is individualized. If you want to put in a two-car garage, first of all, the area may be zoned. Well, say, to be more realistic, you want to put a beauty parlor in your house. Does the area allow that sort of commercial use or not? That's an objective standard. Everybody knows whether they can put a beauty parlor in the house or not. Then when it comes to parking for the beauty parlor that they put in their house, assuming one is allowed, they're going to need variances, and the variances are always individualized. The borough instead of county where we live, it will look at what the parking is like around there generally on that particular street and how this would affect that particular street, what the other uses along that street are, and decide whether to grant the variance. Now, I can understand why you'd want generality such as no commercial uses, commercial uses that don't involve parking, commercial uses of any kind. But no matter what they are, you're likely to need variances, I would think, and it's always individualized. And it sounds like you're saying no individualized stuff for us. It has to be general. Is that right? No individualized stuff. But in this case, what we're dealing with is a situation where we have no standards whatsoever, no reasonable... Well, let me make sure I'm understanding this. As I understand it, you need towers, right? Towers may be an overstatement. We need antennas. Your antennas have to be of a certain height, or do they have to be in high places or on high buildings or on hilltops? There needs to be a vertical elevation to the top. Do they need line of sight to the cell phones? Yes. I don't understand when you say there are no standards. I'm looking at the ordinance. There seem to be lots of standards. Well, what the county... And what the county does is what I think is a crafty game. They give lists of certain do's and don'ts, and then at the end of every list they say, or anything else, we decide. They can reject a site because they say it doesn't blend with the community character. It's part of the practical difference. As to having a lot of clues about what you're supposed to be doing, you certainly have a lot of clues about what you're supposed to be doing. I would say there are some clues about what you're supposed to be doing, but the unfettered discretion at their reserve that the court has rejected in every 253 case it has heard is a very real problem. How about if anybody's been turned down? Have any of them been turned down? I'm sorry? Have any of them been turned down? There have been sites turned down, as Mr. Buntin has stated, and perhaps more importantly, one of the questions that the briefs don't get to is the question of how many people are deterred, how many carriers... How many towers do you have in San Diego County? I don't know the number off the top of my head. Give me a round number. Is it 100? Is it more than 100? Fewer than 100? It would be over 100. So you have 100 towers that have been approved by the county. How can you bring a facial challenge, claiming that you've been prohibited from... Virtually all of them were approved before the WTO. You are into amicus time, so we'll ask you... Thank you, Your Honor. Mr. McBride is anxious to step into the brief. It's too late now. I want to go to Alaska, Your Honor. Certainly good phone service there, I'm sure, Your Honor. Not enough people. Most places are not in the footprint. May it please the Court. Andrew McBride on behalf of CTIA, which is the National Wireless Association. First thing I would say is that both Judge Keepe and Judge Moskowitz below identified, to my mind, four things in the WTO and its reference to these use permits that violate federal law, and whether they violate the prohibition provision of 332 or the prohibition of 253, as Your Honor suggested, is not relevant. Both of them have basically the same language, and they should be applied in the same manner. And those four things are, one is the boundless discretion, which the Court noted in Auburn. A use permit can be denied based upon, quote, any other relevant impact of the proposed use. Well, it's kind of, Your Honor, and I think the answer was a correct one. I can write a list a mile long, and then at the end say, and whatever else I can think of. Well, I understand that, but why do you have a problem until it's denied? Well, see, you have to bring a facial. You have to have a facial challenge, because it may be so onerous no one will ever apply. In other words, if the county is going to deny it. Is that why San Diego is a dead zone? Whenever I go through there, my cell phone dies? And that's why Alaska, you can hear everything. My relatives in San Diego, I can never get them on this. I mean, be a realist in this, Mr. McBride. The reality is it has not been an impediment. I mean, how can you have a situation? It hasn't been operating long enough to be an impediment, as counsel suggested. And the other thing is, suppose the county adopted an ordinance that said, look, the application process is you fill out, as here, this huge application. You pay us $3,000 or $4,000, and then two years later we flip a coin. Can you bring an action under the section that says that you have to have written reasons and you have to have ‑‑ can't have unreasonable delay, and you get a decision? We don't get a decision for two years. Well, then you bring an action for unreasonable delay. You know, I think, you know, all right, then 332 applies, and the prohibition in 332 applies. And the question is, is this a prohibition under 332? In Metro PCS, this Court suggested that 332 applied to individual decisions. 253 naturally fits in terms of an ordinance or a local regulation or requirement. I would urge the Court to carefully consider this statutory construction issue before the Court holds the 332. Am I reading 332 right? You make a deal with the landlord, tallest apartment building in the neighborhood. Can we put a tower on the roof of your apartment building? Yes, pay me $1,000 a month, you can put the tower on my roof. Everything's cool. You've got the county then that you have to get zoning approval of or from, and you go to them and you submit your application to put the tower on the landlord's roof, because you have a deal with them, and they sit on it. It seems to me perfectly clear that under 332, if they sit on it for 30 days, you can sue them. Right, but if they sit on it for 30 days? No, the 30‑day statute of limitations is after the decision. That's a predicate. If there's a decision, it's 30 days. There's no definition of unreasonable delay. Any person adversely affected by any failure to act by a local government that is inconsistent, that means that has the effect of prohibiting, may within 30 days, oh, I see what you mean. Not 30 days of the application, that's a jurisdictional requirement. But just to get to the same place, there's a substantive standard that says that they have to act within a reasonable time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request. And that seems like a much more specific and much more useful standard than the complete vagueness of 253. Well, let me suggest, Your Honor, first of all, a little textual analysis of 253. It says removal of barriers to entry, which means they're removed at the outset so you can enter the market. And the language could not be broader. No state or local statute or regulation or any other state or local legal requirement may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunication service. How can the court read out of that wireless calories? How can you say wireless? There's no reason to, counsel. The 332 is very specific that it provides, that it covers mobile services. That's correct. 253 is far broader than that. This is a carve-out by Congress in which they provided a much more detailed statute. There is a carve-out in 253. There's an express carve-out in 253 in E for 332C3, but not 332C7. But it's in 332 itself. And in terms, except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a state or local government or instrument county, thereof, over decisions. Decisions. Authority over decisions. Authority to make individual decisions. And you look at the whole statute, that's what it's aimed at. Final action or lack of final action. You're suing over their authority to make individual decisions. The 30-day statute of limitations? How do you apply that to a facial challenge to legislative action? How can you preserve local zoning authority, which 332 clearly does, without allowing for individualized decisions, since local zoning authority traditionally operates by individualized location-based decisions? 332C7 was a compromise. It was a decision by Congress that local zoning can go on, but that it has to have some objective criteria. They still have every bit of discretion they had before. Where does it say that? They just need to put it up front. Where does it say that? It looks to me as though they don't have criteria, except that it can't prohibit or have the effect of prohibiting. Well, they have to have substantial evidence to support their decision. Substantial evidence cannot exist without a legal standard. Counsel, before you ran out of time, you had four things that were wrong, and you got to one. What's the rest of the list? Thank you very much, Robert. No time limits on decision, and the county can ask for additional information at any stage in the process. I would call this the physicist's infinite loop. You know, there's no time limits, no procedural limits on the county could go on for years and years. As you point out, eventually you might have a federal cause of action. Mr. Mubraid, you are an expert. You are here on behalf of the association. This was very helpful because you presumably have a broader view. Is San Diego such a hellhole of zoning, you know, compared to the rest of the country? Applications go in, nothing comes out. I mean, is it or is it to me it looks highly typical of what municipalities and do all over the country and all over the circus, that I'm familiar with. Is this really an outlier? I think it is in the sense that the standard list discretion, the ability to say no for any reason or no reason at all. I mean, you talk about effectively prohibiting. If you say. Cincinnati is different. I couldn't point to Cincinnati, but I could point to other jurisdictions that are different, and I could point to a few jurisdictions that are worse. But the history here is what was known in the industry as NIMBYism, not in my backyard. Everybody wants the service, but nobody wants the towers. First, there were bans by the municipalities. Then there were moratoriums. That's unusual. I understand. It must be only in San Diego. That's what Congress addressed, though, in the statute. It said, look, you know, first there were bans, then there were moratoriums. Now there's the third generation of sort of a more clever thing, a 15-page ordinance aimed at wireless only. What are the other two things? Thank you, Your Honor. The surrender of the valuable property rights, as Judge Kleinfeld suggested. Here they say, look, you may have a lease for your particular tower site, but you're going to have to up front put a letter in for us that says we get to decide if someone else co-locates and on what terms, not you, through the market. And that is the up front surrender of a property right. And both Judge Keefe and Judge Moskowitz found that that went into the balance. And combined, as Auburn suggests, you've got to take all these things in combination and decide if they're a barrier. And these are indeed a barrier. They don't have to be an absolute barrier. The FCC has made that clear. They'll have to be a barrier to entry. You could challenge the co-ownership requirement under Dolan and Loretto. Sure. Cases which I think you probably are familiar, even if I don't give you a citation. I know both cases very well, yeah. Dolan, remember, is a zoning condition that forces the taking of properties. I knew you knew that one. It would also be a physical invasion under Loretto to make it a per se taking. So if there's a problem with extracting a requirement that they co-locate, that could be the subject of a Dolan-Loretto challenge to that particular requirement. I'm not saying should have been brought, should not have been brought, but in your judgment that would be subject to that kind of surgical challenge. It could be, but I don't think that that precludes the fact that it can also, as two judges below found, be counted in the bucket of is this a prohibition. It's not an either or. In other words, you have a constitutional right, but you also have a federal statutory right not to have an effective prohibition in front of you. And to say, look, you can get a permit, but you've got to come in and surrender property rights in order to do it, in and of itself could be found to be an effective prohibition. Thank you, Your Honors. If there are any further questions, thank you. Thank you very much. We will let Petitioner Penland take the remainder of his time. Thank you, Your Honor. Just a few brief points. There was a statement made that there are no time limits under the county's ordinance. That's not true. The record established that there are time limits. There are time limits under California law for deciding all of these matters, and those time limits can be challenged if they would violate California law. So there are time limits. Counsel has made the suggestion that Congress desired only objective standards. I think in California we would call that a ministerial permit. So if there are certain standards that would say it must be 12 feet high, it must be covered, you know, in green, and you just look and see if they meet the standards, and if it's a yes, then they get the permit. That's not what Congress intended. They had a substantial evidence standard, which means that you look at the facts individually and that you come in and you make your record based upon those facts, and if there's substantial evidence that supports it, then it's upheld. Counsel, what's your response to the argument that the FCC has definitively decided what the meaning is of the phrase, having the effect of prohibiting the ability to provide these services? Well, two things, Your Honor. One is that it didn't make any statement in connection with wireless regulation, where we've got 332 prohibit or effective prohibition being a ban or effective ban. They didn't look at that standard at all. I've read the California Payphone Association case, and the court basically without citing any statutory language, without really any rules of construction, just says it's a material interference test, not really doing much in the way of analysis there. With respect to a couple of other points, the statement was made that Congress didn't want 40,000 different zoning ordinances or regulations to apply here under these circumstances. Yes, they did. That's specifically what they rejected, the national citing standard, the one standard established by the FCC in favor of individual local zoning ordinances here. The question was asked as to under the county's ordinance, how many individual wireless facility applications have been denied? It's undisputed the answer is zero. This is not a prohibition. Even if it was a material interference test, there's no material interference here. Sprint has not been prevented from providing services here. Their applications have been granted. What about the time delay issues, however? At what point do you think that the statutory reasonableness time period would kick in? Well, the statute allows you to come in and to challenge a failure to act. I must say, though, the legislative history says that the normal time frames here apply under state law and that Congress did not intend to preempt those kind of provisions here. Of course, if you're failing to comply with your own ordinances or state law, you can always challenge that. And there are time frames here. The county isn't permitted just to take these applications in and say, well, we'll get to it when we can. There are limitations here. And oftentimes the results of the delays aren't one-fold being the local government. There may be questions that are raised about a particular facility, and the wireless provider may say, hey, give me a little bit more time. We want to have an opportunity to address those concerns, and we want to take care of that. So the delay isn't always one way. It can be both ways. But you have a challenge under 332 if there's a failure to act. Thank you. Thank you. If there are no further questions, we will thank counsel for a very useful argument. Thank you.
judges: Kozinski , Kleinfeld, Hawkins, Tashima , Thomas , Silverman , Graber , Gould , Berzon , Tallman , Bybee